(C. D. 1924)

QUON QUON COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Dated October 17, 1957)

*Stein & Shostak* (*Marjorie M. Shostak* and *Richard M. Kozinn* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Richard E. FitzGibbon,* trial attorney), for the defendant.

Before Oliver, Mollison, and Wilson, Judges

Mollison, Judge: This case is before us on a motion for rehearing filed by counsel for the defendant. Our decision in the matter is reported in *Quon Quon Company* v. *United States*, 39 Cust. Ct. 76, C. D. 1908. The subject matter of the protests is imported woven rattancore table tops, which had been assessed with duty under the provision for baskets of wood in paragraph 411 of the Tariff Act of 1930 and were claimed to be properly dutiable under the provision for parts of furniture, wholly or in chief value of wood, in paragraph 412 of the said act, as modified. Decision was in favor of the protest claim.

In the memorandum filed by counsel for the defendant in support of the motion for rehearing herein, three grounds therefor are stated, all involving questions of law. We find no merit in any of the grounds.

The first ground stated is that the provision for baskets of wood in paragraph 411 is an *eo nomine* provision encompassing all baskets, regardless of their use. In our decision herein, C. D. 1908, we noted that, in judicially defining the common meaning of the term "basket" in *United States* v. *Byrnes & Co.*, 11 Ct. Cust. Appls. 68, T. D. 38728, our appellate court defined it as a vessel, made of certain materials, in a certain manner, and used for certain purposes. We said, therefore, that the term as defined by our appellate court has a use connotation. In other words, in order to come within the common meaning of the term "basket," as defined by our appellate court, an article would have to respond to all of the elements of the definition, including the element relating to its use. Quite obviously, our appellate court included the element of use in order to distinguish between baskets and many articles made of woven flexible materials having an appearance similar to that of baskets, but which are, in fact, not baskets. In *Morimura Bros.* v. *United States*, 8 Ct. Cust. Appls. 211, T. D. 37438, the inclusion of use as one of the criteria in determining whether an article was or was not a basket was indicated when the court enumerated the elements of a basket as "size, shape, appearance, method of construction, *and practicable uses*" [italics added] and further indicated that such articles must be "serviceable for *ordinary* basket uses, namely, for 'holding, protecting, or carrying commodities' " [italics added].

Consequently, if the term "baskets" is an *eo nomine* designation, it is one which in its common meaning, as judicially defined, includes an element of use. In this respect, it is like, if not identical with, what have long been recognized and called *eo nomine* designations suggesting use, or *eo nomine* designations by use, that is to say, designations by name which *either on their face or elsewhere* make use a

determining or limiting factor. *United States* v. *H. Reeve Angel & Co., Inc.*, 33 C. C. P. A. (Customs) 114, C. A. D. 324; *United States* v. *Nippon Co. et al.*, 32 C. C. P. A. (Customs) 164, C. A. D. 303. Here, the limitation as to use does not appear on the face of the term "baskets," but appears elsewhere, that is to say, in the common meaning of the term, as judicially defined, which is, of course, binding upon this court.

However, counsel for the defendant cites and quotes certain language appearing in the *Byrnes* decision which counsel construes as indicating that our appellate court, in its application of the definition to the merchandise there involved, indicated that use was *not* a factor in the determination of whether or not a given article was or was not a basket.

That language is as follows:

> While the appearance of the exhibit indicates that it may well, by reason of a particular use to which it may be applied, be called a tray, we are of opinion it is, nevertheless, a basket in its material and structure, and clearly within the common meaning of the word.

We think the meaning ascribed to the foregoing language by counsel for the defendant is a distorted one, and note that the language is quoted out of context. We see no reason to assume, as counsel for the defendant seems to do, that our appellate court would carefully define a basket as a vessel having certain uses and then ignore part of its own definition in applying it in a specific instance, and we do not think it did so in the *Byrnes* case. We think the foregoing language has a meaning compatible with the court's own definition of the term "basket." The merchandise involved in the *Byrnes* case was trays. The uses of trays are in some cases, although obviously not in all cases, similar to those of baskets, that is to say, they are both used at times or in particular instances for holding, protecting, or carrying commodities.

Our appellate court laid down a very carefully worded definition of the common meaning of the term, having four elements, to wit, that baskets are—

(1) vessels of varying capacity,
(2) made of flexible materials, such as osiers, cane, twigs, and rushes,
(3) commonly interwoven and bound at the top,
(4) used for the purpose of holding, protecting, or carrying any commodity.

Immediately after formulating that definition, our appellate court used the language, hereinbefore quoted, and relied upon by counsel for the defendant, *but went on to say*:

> * * * We think it [the exhibit in the *Byrnes* case] is within the provisions of paragraph 175 a basket of bamboo, and is more specifically therein provided for than in the provision for manufactures of wood in paragraph 176. The bottom is

interwoven, as baskets commonly are, *and it is adapted and used to hold, protect, or carry suitable commodities that may be placed therein.* There is no denominative provision in the tariff act for trays. [Italics added.]

We think, therefore, that the meaning our appellate court intended to convey, and which is in consonance with its definition, is that the particular articles involved in the *Byrnes* case, which might bear the name "trays," nevertheless, met *all* of the *four* requirements of baskets, and, hence, were baskets under the common meaning of the term.

Our appellate court did not hold that *all* trays were baskets, but only that the trays involved in the *Byrnes* case were, as it said, "clearly within the common meaning of that word," which it had just carefully defined.

We think the foregoing also serves to demonstrate the error of defendant's second ground for rehearing, also said to be based upon the common meaning of the term "basket," as laid down in the opinion in the *Byrnes* case. Counsel for defendant describes the merchandise therein as a flat circular article of interwoven bamboo, about 12½ inches inside diameter, with an edge or side of the same construction about five-eighths of an inch high, and states:

That merchandise was held to come within the common meaning of the term "basket", as defined therein, and *a fortiore* [*sic*] the merchandise at bar comes within that definition.

We do not see why, because the trays involved in the *Byrnes* case were of the description given, the instant table tops, which are of much larger dimensions, even though of similar materials and construction, should *a fortiori* be within the definition of baskets. A napkin or a serviette is made of the same materials and of the same construction as a tablecloth, but a tablecloth, which is larger than a napkin, is not *a fortiori* a napkin, at least in its common or ordinary meaning.

Again, counsel neglects to note the other elements of baskets, besides material and construction, as laid down in the definition. Moreover, our appellate court noted that there was no denominative provision for trays in the 1913 act, there involved. There *is* a provision in the present act for parts of furniture, and baskets are not ordinarily considered as furniture. Tables are articles of furniture, of which table tops are a part, and are defined in Webster's New International Dictionary, second edition, 1945, as—

An article of furniture, consisting of a smooth flat slab, board, or the like, fixed horizontally on legs or other support, and variously used, as in eating, writing, working, or gaming.

The nature and use of baskets and tables are so dissimilar that we hardly think anyone would confuse a table with a basket, even if the latter were mounted on legs.

Counsel for the defendant admits that the final ground urged for rehearing was not raised at the trial. It is, however, stated by counsel for the defendant, "that the provisions of paragraph 412 for furniture in chief value of wood and parts thereof contemplates that the furniture must be in chief value of wood before the part in question is added" and that there is no evidence to establish that the patio furniture, of which the imported articles were to form a part, were in chief value of wood.

While, as will be hereinafter demonstrated, we do not agree with counsel for the defendant in his assertion that the provision for parts of furniture found in paragraph 412, as amended, contemplates that the furniture of which it is ultimately to be a part must be in chief value of wood "before the part in question is added," we are of the opinion that, if counsel for the defendant now urges that view as a ground for rehearing in good faith, it would appear to be incumbent upon counsel, inasmuch as the matter is said to be raised for the first time on application for rehearing, to make some positive or affirmative statement that the defendant has reasonable ground for believing that the furniture of which the imported articles were to be parts was, in fact, not in chief value of wood. No such statement appears in the moving papers. If the component material of chief value of the furniture of which the imported articles were ultimately to be parts is actually a matter which the defendant is *not* disposed and prepared to question, then the application for rehearing is, to that extent, sought on frivolous grounds.

It is noted that at page 76 of the stenographic transcript of the record, trial counsel for the defendant vigorously objected to the receipt of evidence relating to the component material of chief value of the furniture ultimately to be made with the use of the imported parts—

* * * on the ground that it's entirely immaterial to the issue because there were no two articles imported and it has nothing to do with the classification of Exhibit 1 in the condition in which it was imported. It's entirely immaterial and irrelevant to the issue.

It is also noted that, at pages 51–52 of the stenographic transcript of the record, trial counsel for the defendant brought out the fact that the relative ratio of the selling price of the completed tables ascribable to the parts thereof was $3 for the wrought iron legs which were obtained domestically and $6 or $7 for the imported table top. While it is true that these figures related to selling price, and not cost

to the manufacturer, nevertheless, it cannot be properly stated, as it is in the defendant's memorandum, that—

* * * there is nothing in this record which *even tends* to prove that the so-called "patio furniture" made from the baskets herein and iron stands are in chief value of wood even after uniting the baskets with the stands. [Italics added.]

The foregoing figures, elicited by trial counsel for the defendant, certainly *tend* to prove the relative values of the component materials of the furniture which was to be ultimately made with the use of the imported parts.

However, we are satisfied that the premise upon which counsel for the defendant urges the ground for rehearing last stated, i. e., that paragraph 412, *supra*, "contemplates that the furniture must be in chief value of wood before the part in question is added" is untenable.

Both as originally enacted, and as modified by the Presidential proclamation relating to the general agreement, paragraph 412 of the Tariff Act of 1930 provided for furniture and parts thereof, wholly or in chief value of wood, and not specially provided for.

Counsel for the defendant, in effect, contends that the foregoing provision, insofar as it provides for "parts," covers only parts, wholly or in chief value of wood, of furniture, wholly or in chief value of wood.

As pointed out by defendant's own trial counsel, it is axiomatic that imported merchandise is classifiable for duty in its condition as imported. In the case of a *part* made classifiable under a given provision of the tariff act, by reason of its component material of chief value, it is clear that the *whole article of which it is to be a part is not in being at the time the part is imported.* How, then, could the component material of chief value of the whole article be determined at the time of importation?

Under the applicable statute, paragraph 1559 of the tariff act, and the well-settled law as embodied in the judicial decisions thereunder, the component material of chief value of the whole article would be determined by the ascertained cost to the manufacturer of each component material at the time such materials were ready for assembly or manufacture into the whole article. That time, of course, is some time *after* importation.

The interpretation urged by counsel for the defendant in the memorandum would require that classification of the imported part be controlled by a situation which would obtain some time after importation. It is true that Congress has sometimes made disposition or use of imported merchandise subsequent to actual importation controlling of the *rate of duty* (but not the classification) which is to be applied, but, in all of such cases, it has clearly manifested such an intent by

providing that the reduced rate shall apply only upon the happening of the specified event. No intent of such nature is evidenced here.

Moreover, under the interpretation urged by counsel for the defendant, what would be the event in the case that the parts were imported, but never actually used as parts of a whole article?

We think that the language used by the Congress is susceptible of a more sensible, reasonable, and practical interpretation. We are of the opinion that the provision covers parts, wholly or in chief value of wood, of furniture, regardless of the material of which the furniture will be made.

There is no question here but that the imported parts of furniture were made wholly of wood, and they are properly classifiable for duty under the provisions of paragraph 412, as modified, as held in our decision reported as C. D. 1908.

The motion for rehearing is denied. Order will issue accordingly.